IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Case No: 1:12-CR-278-JCC |
| v. | ) | Criminal Sentencing Date: |
| JOHNNY SOZA, | ) | December 14, 2012 |
| Defendant | ) | |
| | | Judge: The Hon. James C. Cacheris |

## DEFENDANT'S SENTENCING MEMORANDUM

COMES NOW the Defendant, Johnny Soza (Mr. Soza, Johnny), by and through his counsel, Karen Scarborough, Esquire, and hereby submits this sentencing memorandum and attachments in the above-captioned case.

On August 20, 2012, Mr. Soza pleaded guilty pursuant to a written plea agreement, to a one-count indictment of Enticement of a Minor to Engage in Sexual Activity, in violation of 18 U.S.C. § 2422 (b).

The Plea Agreement between Mr. Soza and the Government stipulated that the Government would agree to a three-level decrease in the Mr. Soza's offense level and according to the PSR, the Probation Office concurs. For this reason and others, the Government and Mr. Soza agree that the properly calculated advisory sentencing guideline range for this case is 168 to 210 months with a mandatory minimum sentence of 10 years.

In light of *United States v. Booker,* 543 U.S. 220 (2005), however, and for the reasons set forth in this memorandum, including that Mr. Soza has fully accepted responsibility for his offense, had participated in the offense for a short period of 10 months, and has no prior criminal history, Mr. Soza requests that this Court impose the 10 year mandatory minimum sentence followed by a substantial period of supervised

1

release, accompanied by the conditions of sentencing, since a longer sentence would frustrate the goals of federal sentencing, and exceed the sentence necessary to achieve the statutory purposes of punishment.

## THE UNDERLYING CASE

The facts of this case are straightforward and set forth in the Statement of Facts previously filed in this case and are not disputed. *See PSI pp. 5 through 8.*

Mr. Soza's conduct occurred during a period of only 10 months. Mr. Soza cooperated with investigators and turned over his computers and other items requested of him.

Immediately after the seizure of items, Mr. Soza began to explain to his wife his criminal conduct and secret relationship with the victim. He also revealed to her for the first time, that he was sexually abused on a consistent basis as a child by his baby sitter, the baby sitter's friend and his grandfather's girlfriend.

With the encouragement of his wife Johnny voluntarily entered treatment with Irena Sarovic, EdM, LPC, NCC, to begin to address the issues regarding his sexual abuse and neglect as a child. He attended treatment consistently from March 3, 2012 through June 26, 2012, until he was arrested on this offense. Irena Sarovic diagnosed Mr. Soza with Post Traumatic Stress Disorder. *See Exhibit A, letter from Irena Sarovic and her Resume.*

It is important to point out that the forensic analysis on Mr. Soza's computers and electronics seized during the arrest, revealed no evidence that he had distributed the images he requested and received from the victim. He kept these images private. He absolutely did not profit from them through distributing them to other people.

2

Furthermore, he was not charged with Distribution of Child Pornography. Johnny is very sorrowful for his behavior. *See Exhibit, B, Johnny's two letters addressed to the Court.*

## BACKGROUND OF JOHNNY SOZA

**I.   CAREER SERVICE WITH THE UNITED STATES AIR FORCE, EDUCATION AND TRAINING.**

Johnny Soza is a 35-year old native of Nicaragua who migrated to the United States when he was 14 years old. He grew up in a poor and underprivileged environment. He was neglected as a child. He is a naturalized citizen of the United States. After he graduated from high school in 1995 he attended Community College part time and he was gainfully employed full time at Wal-Mart, as a valet parker and at other department stores.

Johnny joined the United States Air Force in 1999 and he dedicated himself to military service. He enjoyed a flawless career in the United States Air Force. He entered the Air Force as an E 1 and departed as an E 3. He served his country from 1999 to 2004 on active duty for over four years. *See Exhibit C, Certificate of Honorable Discharge.* While in the Air Force he learned to be an electrician. He was an electrician and a member of the Civil Engineering Squad from 2000 to 2004. *See Exhibits D. certificates of electrician programs accomplished.*

During Mr. Soza's period of active duty, he received several service awards, medals and badges reflecting his successful performance, including: 60th Civil Engineer Squadron Airman of the quarter award for his outstanding contributions and achievements while he was at Travis Air Force Base, California; Certificate of

3

Nomination for Honorable, Outstanding service and Loyalty to the United States Armed Forces, the Air Force Good Conduct Medal; the Air Force Longevity Service Award, the Air Force Outstanding Unit Award, National Defense Service Medal; Air Force Training Ribbon and Air Force Civil Engineer Badge. *See Exhibit E.* Additionally he provided essential service to this country during the September 11, 2001 Terrorist Attacks. He was a team leader in charge of providing power to the alternate air field so fighter jets could get in and out of Travis AFB in California.

When Johnny was honorably discharge from the Air Force, he joined the Air Force Reserves and continued to serve this country on Active Duty for three years; then he served several years in the Air Force Reserves on inactive duty. *See Exhibit F, Honorable Discharge from the Air Force Reserves.* During his time in the reserves he was also employed as an electrician in Yorktown, Virginia by Harris Electric. During this time Johnny also worked extremely hard to acquire the required training and expertise so that he could be a firefighter and paramedic. *See Exhibit G certificate etc., verifying these accomplishments.* He then worked as a firefighter and paramedic in Norfolk, Virginia and later in Manassas, Virginia.

On approximately April 26, 2011, Mr. Soza entered civil service becoming employed with the Department of Defense as a Firefighter and Paramedic as a grade level GS-08. He was stationed at Fort Belvoir, Virginia in this capacity when he was charged with this offense. *See Exhibit H, performance appraisal and 2 picture of Johnny in Uniform.*

His evaluations report that he was successful in performing his responsibilities. He was evaluated as excellent in areas of dependability, dedication, arriving to work prior to his start time, having high regard for integrity; showing respect for his peers and over all exceptional technical knowledge and skills needed to perform his job to the highest

4

standards. He consistently exceeded performance expectations as well as displaying strong character as a leader and motivator. *See Exhibit H Supra.*

## II. FAMILY AND FRIENDS ACCOMPLISHMENTS, ETC.

Johnny Soza was born and raised in Nicaragua. He was reared by his grandfather because his father and mother had to leave their home to get a job. Their jobs were many hours away from their home. They were gone for large periods of time. He led a somewhat underprivileged life, the family struggled financially, and his father was an alcoholic. When Johnny was 11 years old his father moved to the United States leaving Johnny without a father in the home for three years. Johnny migrated to the United States at approximately 14 years old and joined his father. He is one of three children.

Johnny reported that when he was about six years old, he was sexually molested by his baby sitter and the sitter's friend. He reported that when he was 10 years old his grandfather's girlfriend sexually abused him on multiple occasions. Johnny never told anyone about the abuse until after this offense was investigated. *See PSR at p.11 and Exhibit I, a history provided by Johnny about his childhood, work in the Air Force and as a Fire fighter and Paramedic.*

Mr. Soza's mother notes that since Johnny was a young child he has been consistently helpful and giving to his brother, sisters, she and that he was a good role model to his siblings. She also reports that he has assisted and held the family together financially and in other important ways. She states that he has always been proud of saving and assisting lives. She describes several things Johnny has done making him a great person. His brother Kenneth describes many remarkable things Johnny did to improve his life. Kenneth states that Johnny was his actual father and describes many remarkable things

5

Johnny did to improve his life. *See Exhibit J, letters from Cristina Soza, (Johnny's mother) and Kenneth Soza, (Johnny's brother).*

Johnny met his wife, Liza when he was in the Air Force. He married his wife on March 31, 2000. Liza is a very accomplished woman. She has served her country for 12 years in the Air Force and in civil service. She currently works in the U S Public Health Service working for the Department of Homeland Security at the National Operations Center in Washington D.C. *See Exhibit K, Liza's Curriculum Vitae.*

Liza reports that Johnny is an excellent spouse and father and she continues to express her steadfast devotion to Johnny even though she is fully aware of his criminal behavior in this matter. *See Exhibit L, a picture of the Soza Family.* She states that she and Johnny enjoy a healthy and fulfilling married life. She describes Johnny as her soul mate, angel, and a very loving and supportive husband who is fully dedicated to giving of himself to help his community. *See Exhibit M, character letter written by wife, Liza Soza.* While the marriage has admittedly been strained in the aftermath of this case, the couple remains close and Liza is very supportive of her husband. Mrs. Soza states that she is committed to joining with her husband, his family and friends, and the community to fully support and assist Johnny with his ongoing, possibly lifelong treatment and recovery and its fallout, specifically his relapse prevention once he is has had medical treatment and is released. Additionally, Liza's family and in laws are supportive of Johnny as well. *See Exhibit N, Reference Letter of Julie Lawrence, (Liza's mother); and Reference Letter of Josue Castillo (Johnny's brother in law).*

Liza has also affiliated with support groups for spouses of sex offenders and the incarcerated. She is working steadily to educate herself as to the causes of sexually deviant conduct, the devastating harm it causes to victims and to recognize behavior and signs of

6

relapse. Liza's mission is to acquire as much knowledge as possible so she will be able to also teach herself, what Johnny is learning during his mental health treatment while he is incarcerated.

Despite his arrest and conviction, Mr. Soza continues to enjoy the support of a strong alliance of family, close friends and colleagues. *See, Exhibit O, Reference Letter of Michelle Brown, Reference Letter of Michael Homes, Reference Letter of Jennifer P. Hinson, Reference Letter of Ronnie Thomas, Reference Letter of Jennifer Myers, Reference Letter of Teresa M. Denton-Price, Reference Letter of Luis G. Gomez, Reference Letter of Jim Fremeau, Reference Letter of Anthony North, Reference Letter of Lisa Cauldwell.* Mr.Soza has had a positive role in his family and his community. Johnny is immensely sorrowful for his unfortunate and extremely bad decisions made when committing this crime. *See Exhibit B Supra.(Johnny's letters to the court)*.

Through an established course of therapy and treatment, Mr. Soza can gain deep insights into his behavior and its eradication. Mr. Soza constantly speaks about the pain he caused this victim. Given his open mind, through treatment he can also gain a thorough appreciation of the circumstances of the victim and his unacceptable contribution to her exploitation. Johnny recognizes that he will need comprehensive support and treatment and is completely committed to his recovery. Johnny sincerely wants to do the right things and not the wrong things. He is anxious to start treatment to learn why he committed this crime and how not to repeat this offense or similar offenses.

He has assembled a team, including family and friends, to surround him to seek a permanent change in his attitudes and ensure that inappropriate urges are diverted to positive activities. Johnny has served his country admirable in the past, has been a valued employee, relative and member of the community. *See Exhibit P, Letter from Cristina Soza, (Johnny's*

*mother), Letter from Liza Soza, (Johnny's wife), Letter from Eloina Castillo (Johnnys's sister), Josue Castillo, (Johnny's brother in law) and Harold Kersellius, a veteran with 23 years of service in the United States Army, in the Medical Professions, (Johnny's very close friend and neighbor).*

Johnny has no past criminal history, has completely accepted responsibility for his crimes before the Court and has above all expressed deep sorrow for his offense.

With his supportive wife, family, friends and community by his side, Johnny is struggling but doing his best to prepare for a long period of incarceration and complying with any and all post release conditions. His intention and goals are to positively participate in mental health treatment to understand and learn about the reasons he committed this offense, and make sure it never happens again. He is committed to return from prison as a better person and to once again make positive contributions to society and to be an excellent husband and father.

## SENTENCING FACTORS

This Memorandum is submitted in an effort to assist the Court to fashion a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of punishment, as required by 18 U.S.C. § 3553(a), in light of *United States v. Booker,* 543 U.S. 220 (2005). Accordingly, Mr. Soza respectfully submits the following:

**I. THE SENTENCING GUIDELINES ARE ADVISORY IN NATURE, NOT BINDING.**

The Court is no doubt aware of the broad ramifications of *Booker, supra,* for this proceeding. In *Booker, supra,* the Supreme Court restored this Court's ability to fashion a sentence tailored to the unique circumstances of each case and criminal defendant, by requiring courts to consider factors other than the sentencing range prescribed by the United States Sentencing Guidelines. *United States v. Hughes,* 396 F.3d 374. 381 (4th Cir.

8

2005)(interpreting *Booker*). Thus, although this Court still must take the Sentencing Guidelines into account, *Booker* rendered the Sentencing Guidelines advisory.

Rejecting a claim that sentences significantly outside the advisory guidelines range should be subjected to exacting review on appeal, the Supreme Court stressed that "the Guidelines are only one of the factors to consider when imposing sentence…." *See Gall v. United States,* 128 S. Ct. 586, 594 (2007) and *United States v. Pauley, 511 F.3d 468* (4th Cir. 2007). Moreover, pursuant to *Rita v. United States,* __U.S.__ , 127 S.Ct. 2456, 2465 (2007), in considering the § 3553(a) factors, the sentencing guidelines are to be given no more or less weight than any other factor. In addition, a sentencing court may find: that the case falls outside the "heartland" contemplated by the guidelines; "the guidelines sentence itself fails properly to reflect the § 3553(a) considerations;" or "the case warrants a different sentence regardless." Under *Rita,* a district court is free to simply disagree, based on the §3553(a) sentencing factors, with the USSG's "rough approximation" of the appropriate sentence for any given case. *Id.*

Thus, the sentencing guideline range is no longer binding on the Court, but is only one of seven co-equal statutory sentencing factors enumerated in 18 U.S.C. § 3553 (a). *Booker,* 543 U.S. 220, 259-60 (2005). Those factors include: (a) the nature and circumstances of the offense and the history and characteristics of the Defendant, (b) the kinds of sentences available, (c) the guideline range, (d) the need to avoid unwarranted sentencing disparities, (e) the need for restitution, and (f) the need for the sentence to reflect the following: the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the Defendant, and provide the Defendant with needed educational or vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. § 3553(a).

A sentence within the advisory sentencing range enjoys no presumption whatsoever in this Court - that is, there is no presumption that the advisory USSG range is the minimally sufficient sentence that § 3553(a) requires this Court to determine and impose. *See Gall, (slip op.* at 11-12) (a District Court "may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented.") (internal citation omitted). In *Gall,* the Supreme Court found that a sentence of probation was "reasonable" in a case in which the Guidelines called for a sentencing range of 30-37 months, and reversed the Court of Appeals for failing to "reflect the requisite deference" to the District Court's sentencing decision. *Id.* at 14, 17. Further, the Court held that reviewing courts must apply a "deferential abuse of discretion standard in reviewing all sentence, "whether inside, just outside or significantly outside the guidelines range." *Id.* at 2.

Indeed, in two recent summary reversals, the Court expressed in certain terms that the Guidelines cannot be used as a substitute for a sentencing court's independent determination of a just sentence based upon the statutory sentencing factors. *Nelson v. United States,* ____ S. Ct. ____ 2009 WL 160585 at * 1-2 (Jan. 26, 2009) ("Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable... The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable.") (emphasis in original); *see also Spears v. United States,* ____ S. Ct. ____, 2009 WL 129044 (Jan. 21, 2009). In other words, sentencing courts commit legal error by using a Sentencing Guidelines range as a default to be imposed unless a basis exists to impose a sentence outside that range.

Indeed, a sentencing court must impose the minimally sufficient sentence that accomplishes the statutory purposes of sentencing. As the Court of Appeals has noted,

"[A] district court's job is not to impose a 'reasonable' sentence.

> Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2). Reasonableness is the *appellate* standard of review in judging whether a district court has accomplished its task."

*United States v. Davenport*, 445 F.3d 366, 370 (4th Cir. 2006) (quoting *United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006)) (internal quotation marks omitted) (emphasis in original); *see also Rita, supra,* at 2465 (stating that any presumption of reasonableness for a Guidelines sentence applies only on appeal). The "overarching" command of § 3553(a) is the Parsimony Clause, which "instruct[s] district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough v. United States,* 128 S. Ct. 558, 563 (2007)(quoting *Gall, supra,* 128 S. Ct. at 600).

The Fourth Circuit has prescribed the steps the District Court must follow in imposing a sentence. First, the Court should calculate the proper guideline range after making appropriate findings of fact. *Pauley, supra* (citing *Gall,* 128 S. Ct. at 596); *see also Hughes, supra,* 401 F.3d at 546. "After calculating the Guidelines range, the sentencing court must give both the government and the Defendant an opportunity to argue for whatever sentence they deem appropriate." *Id.* The Court should then consider all of the § 3553(a) factors to determine whether they support the requested sentence. *Id.* If the guideline range does not serve the factors set forth in § 3553(a), then the Court may impose a non-guideline or "variance" sentence. *United States v. Hampton,* 441 F.3d 284, 287 (4th Cir. 2006); *United States v. Moreland,* 437 F.3d 424, 432 (4th Cir. 2006). The Court must articulate reasons for the sentence it imposes, particularly a variance sentence, by reference to the § 3553(a) factors and its factual findings. *Id.*

As the Court follows this procedure, Mr. Soza respectfully requests that the Court

consider several important and unusual circumstances in fashioning an appropriate sentence, which are addressed in detail below:

### A. The Nature and Seriousness of the Offense

There is certainly no dispute that the offense of Enticement of a Minor to Engage in Sexual Activity, with which Mr. Soza is charged, is very serious and he must be punished for committing this crime. It is critical to point out, however, that this case is not part of a larger pattern involving Mr. Soza's direct abuse of children. There is no evidence that Mr. Soza's behavior is part of a pattern of activity as a pedophile. He has no history as a predator or pedophile. In fact at age 35 years he had absolutely no criminal charges or convictions.

In this case, the victim and Mr. Soza began communicating with each other when the victim was 15 years old via a chat lobby, texting, email and Skype. They were infatuated with each other. They both professed their love for each other. They communicated with each other for approximately 10 months via a chat lobby, texting, email and Skype, all while they continued to profess their love for each other. Although Mr. Soza's conduct was criminal, the fact is that the minor's conduct in this case was always consensual and willing. The victim was 16 years old when they met at a hotel in Canada. This was the only time he physically met with the victim.

Also, the graver ills that often surround charges of Enticement of a Minor to Engage in Sexual Activity such as prostituting run away children, selling run away children, or using run away or handicapped children to produce, distribute or sell child pornography are not present in this case. The victim in this case was not a vulnerable victim, not a restrained victim and not an official victim. The Government conducted a thorough investigation of Mr. Soza including an extensive forensic investigation of his home

12

computers and other electronics. No evidence was found that Mr. Soza distributed child pornography, and the Government did not charge Mr. Soza with distribution. It is very possible that his childhood sexual abuse and neglect may have been a contributing factor in his commission of this offense.

### C. A Sentence Below the Advisory Guidelines Will Provide Just Punishment for the Offense and Deter Future Criminal Conduct

The crime in this case took place in the midst of Mr. Soza's' solidly successful civilian career as a paramedic and fireman stationed at Ft. Belvoir, Virginia. Prior to embarking on his civilian career, Mr. Soza enjoyed a successful military career and served his country in the United States Air Force for over 4 years and on active and inactive reserve status for several years. His employment record reflects steady promotions and increased responsibility. His performance likewise improved as his career advanced and he continued to further his training and education.

With respect to just punishment, there is very significant punishment involved with the offense of Enticement of a Minor to Engage in Sexual Activity. At the very least, Mr. Soza must serve a mandatory period of 10 years. This is powerful and significant punishment in and of itself. As such, Mr. Soza will not be present to continue his strong family ties or function as a husband and more importantly be a good father to his two very young children. His wife and children will not receive any financial contributions during this period of time. Ms. Soza and their two children will be deprived of Mr. Soza's steady hands on love, protection, wisdom and support. Mr. Soza will not be able to father his children during extremely formative years and the children will suffer tremendously as a result. Mr. Soza recognizes that his criminal behavior has caused this injustice and injury to his wife, children, family and community and he anguishes over these facts daily. This

13

provides a most serious and life long punishment for Mr. Soza. His remorse and grief over the reality that his conduct has injured society as well as his family has propelled him to deep remorsefulness and more importantly caused him to finally be honest with himself about his criminal conduct and his mental and psychological issues.

Additionally, with respect to just punishment there is unique punishment involving this crime. As a result of this crime, Mr. Soza will be listed as a sex offender and required to register as such wherever he lives. His address will be published on the Internet as the home of a registered sex offender. He will face restrictions as to where he lives, where he travels, where he works, and who he sees. As a sex offender, Mr. Soza will not be able to go to his children's schools to be a part of or observe their development and maturation in school programs, events, plays, sports, recitals, fund raising, teacher conferences and field trips. He will be branded with the legal and social stigma associated with cases such as this and other sex offenders. Obviously and tragically, this status will also have tremendous negative long lasting effects on Mr. Soza's wife, children and family. This is serious life time punishment for Mr. Soza. He will absolutely never be able to make up for or rectify what he has taken away from his wife and children.

As a result of his actions, Mr. Soza has lost a promising solid career that was unlimited in potential. He has lost a significant income, and the ability to use his skills and expertise in the marketplace. As is obvious, it is next to impossible to maintain professional employment with a felony criminal record as a sex offender. He has also placed both he, his spouse children and family in serious financial jeopardy in an already difficult economic climate. Frankly, the irreparable collateral consequences of his conviction will adequately "reflect the seriousness of the offense" in this tragic case.

14

Similarly, we respectfully submit that a long period of supervised release, added to a significant term of imprisonment, loss of career, humiliation of a felony conviction, and the lifetime stigma as a sex offender, will adequately deter Mr. Soza and others from similar conduct. The imposition of a lengthy period of supervised release will also provide the Court and society as a whole with the ability to monitor Mr. Soza and confirm that he is on a correct path toward rehabilitation.

The mandatory 10 year confinement provides above and beyond the time necessary for Mr. Soza to receive treatment and acquire the tools necessary to make sure that he never commits any crime in the future. A sentence greater than a 10 year confinement would amount to needlessly piling on time for no good reason or purpose. The substantial 10 year period of confinement has already and will continue to deter Johnny from committing future crimes. A sentence of 10 years certainly promotes respect for the law and as such it provides deterrence to members of the public that may contemplate similar criminal conduct thereby reminding them of the severe consequences of such conduct. The safety of the community will also be served when Johnny serves a 10 year sentence. This is because it provides an abundance of time for him to receive necessary treatment, grow, mature and become a healthy rehabilitated person.

D. **The Nature and Characteristics of the Defendant**

Johnny has absolutely no criminal record. He had a successful military career in the United States Air Force and subsequent civilian employment as a Firefighter and Paramedic Mr. Soza has the determination and resolve to correct course and turn his life around to a positive direction and be a solid and law abiding citizen. He has exposed his criminal behavior to his wife and friends. Despite his criminal behavior, Johnny is still a good and

decent person. He has always been a successful caring person dedicated to his family, employer, friends and his community. As a firefighter Johnny entered burning buildings and risked his life on a daily basis in order to save people in the community that he did not know.

Despite the nature of this charge, his family and friends support his recovery unconditionally. Since his crimes were discovered Johnny has already made positive accomplishments; some of these include the following:

1) He has grave remorse and guilt for the crime he committed;

2) He has accepted the responsibility for the crime he committed;

3) He has begun to recognize that his deviant and criminal sexual behavior requires professional treatment on a consistent and lifetime basis;

4) For the first time he has revealed and uncovered to his family his secret that he was injured by sexual abuse he suffered as a child;

5) He has become anxious to begin and acquire the proper mental health treatment and learn in treatment to control and manage his deviant behaviors;

6) He has finally become honest with himself and his family regarding his criminal actions and the compartmentalized secret life he was leading;

7) He is feeling genuine empathy for his victim;

8) Although extremely painful for him, Mr. Soza has been brutally honest to his wife, family and friends in exposing the full details of his criminal sexually deviant behavior as specifically set forth in the Statement of Facts in this case;

9) He has acknowledged to his friends and family that he deserves to be punished and he requires treatment for his mental and psychological issues;

10) He has requested the assistance and support of his family and friends to support him during his incarceration, treatment during incarceration and their assistance in hands on contact with him during his lifetime relapse prevention program.

With this strong foundation and beginning Mr. Soza is fully ready to participate in treatment. It is certain that he will be rehabilitated. It is certain that he will return as a valuable member of society in all respects after serving his sentence and receiving treatment.

## SENTENCING REQUEST

For the foregoing reasons, Mr. Soza submits that a sentence of 10 years, the mandatory minimum 10 years, is sufficient to accomplish the purposes of sentencing in this case and should be imposed. We respectfully submit that such a sentence is more than adequate, but not greater than necessary, to meet the sentencing goals of 18 U. S. C. § 3553(a).

Further, Mr. Soza agrees with the Probation Office's conclusion that due to his financial situation and negative net worth, he lacks the ability to pay a fine.

Finally, Mr. Soza requests that the Court recommend that he serve his sentence at the Butner Federal Correctional Institute in Butner, North Carolina so he can participate in appropriate sex offense treatment programs at the Institute.

Date: December 7, 2012

Respectfully submitted,

/S/
Karen Scarborough, Esquire
(VSB # 31960)
10482 Armstrong Street
Fairfax, Virginia 22030
Telephone: 703-691-1920

Facsimile: 703-385-2896  
Email address: scarboroughlaw@yahoo.com  
Counsel for the Defendant, Johnny Soza

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of December, 2012, I electronically filed the foregoing Defendant's Sentencing Memorandum with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

Maureen C. Cain, Esquire  
U.S. Attorney's Office  
2100 Jamieson Avenue  
Alexandria, VA 22314  
Phone: 703-299-3700  
Fax: 703-299-3981  
Email address: Maureen.cain2@usdoj.gov  
Special Assistant U.S. Attorney

/S/ _____  
Karen Scarborough, Esquire  
(VSB # 31960)  
10482 Armstrong Street  
Fairfax, Virginia 22030  
Telephone: 703-691-1920  
Facsimile: 703-385-2896  
Email address: scarboroughlaw@yahoo.com  
Counsel for the Defendant, Johnny Soza