IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

JOHNNY SOZA,                    )
                                )
        Petitioner,             )
                                )
            v.                  )        1:12cr278
                                )        1:13cv1534
                                )
UNITED STATES OF AMERICA,       )
                                )
        Respondent.             )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Petitioner Johnny Soza's ("Petitioner") Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255. [Dkt. 43.] For the following reasons, the Court will deny Petitioner's motion.

### I. Background

On June 6, 2012, a federal jury indicted Petitioner on charges of enticing a minor in violation of 18 U.S.C. § 2422(b) ("Count I"), production of child pornography in violation of 18 U.S.C. § 2251(a) ("Count II" and "Count III"), and receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2) ("Count IV"). (Indictment [Dkt. 1] at 1.) These charges stem from Petitioner's sexual relationship with a minor living in Canada. Petitioner met the victim through an online chat room in April 2011, and throughout the next several months they exchanged

1

sexually explicit photographs and messages at Petitioner's urging. (Statement of Facts [Dkt. 29] at 1-3.)

On or about January 23, 2012, the victim's father discovered several sexually explicit messages and pictures from Petitioner. (Gov't Resp. [Dkt. 53] at 3.) The victim's father contacted Canadian authorities and sent a message to Petitioner. (*Id.*) Nevertheless, Petitioner continued to communicate with the victim through a friend's digital device. (*Id.* at 4) On February 17, 2012, Petitioner drove to Canada and had sexual intercourse with the victim at a hotel. (Statement of Facts at 3.) Petitioner returned to the United States and was arrested in June 2012. (Arrest Warrant [Dkt. 9] at 2.)

As to the evidence in this case, the Government obtained over 15,000 text messages between Petitioner and the victim, along with images of the victim's genitals, numerous emails, Skype logs, a hotel receipt, a picture of the victim and Petitioner at the hotel together, credit card statements showing that Petitioner purchase the hotel room, and taped interviews of Petitioner, the victim, and her father. (Gov't Resp. at 4.) The documentary evidence corroborated the victim's story of sexual exploitation. (*Id.*)

In addition to the victim described above, analysis of Petitioner's online accounts revealed that he was actively enticing several other minors. (Gov't Resp. at 4.) In the text

2

messages sent to these minors, Petitioner asked sexually suggestive questions and requested "naughty pictures." (*Id.*) He received at least one image of a minor showing her genitals. (*Id.* at 5.)

Petitioner retained Karen Scarborough, an attorney licensed to practice in this jurisdiction, to represent him on these charges. (Mot. to Substitute [Dkt. 25] at 1-2.) Following negotiations, the Government offered to dismiss Counts II, III, and IV in exchange for a full plea to Count I. Petitioner agreed to this deal via a written plea agreement. (Plea Agreement [Dkt. 28] at 1.)  In this agreement, Petitioner concurred that Count I carried a mandatory minimum of ten years' incarceration and a maximum term of life.  (*Id.*)  In a statement of facts filed in connection with his plea, Petitioner admitted to exchanging sexually explicit messages with the victim and engaging in sexual intercourse with her on at least one occasion.  (Statement of Facts at 1-3.)

On August 10, 2012, Petitioner appeared before this Court and pled guilty to Count I.  (Plea Mins. [Dkt. 27] at 1.) During the ensuing plea colloquy, Petitioner affirmed that he had reviewed the plea agreement, statement of facts, and indictment with his attorney.  (Gov't Ex. B, Plea Tr. at 3.)  He further informed the Court that his attorney had answered all of his questions and he was satisfied with her services.  (*Id.*)

3

The Court then discussed various provisions of the plea agreement, including the sentencing guidelines. (*Id.* at 4.) Petitioner acknowledged that he understood everything discussed. The Court accepted Petitioner's guilty plea as knowingly, voluntarily, and intelligently made. (*Id.* at 9.)

Petitioner appeared before the Court for sentencing on December 14, 2012. (Gov't Ex. C, Sentencing Tr. at 3.) With acceptance of responsibility, the presentence report calculated Petitioner's guidelines range at 168 to 210 months incarceration. (*Id.* at 4.) Petitioner acknowledged that the offense conduct described in the presentence report was accurate. (*Id.* at 3.) The Court adopted the presentence report but chose to grant a downward variance because Petitioner had no criminal history, had expressed extreme remorse, had a history of service to the community, and had a good support system as indicated "in a memo that's been submitted by Ms. Scarborough in this case." (*Id.* at 9-11.) The Court ultimately sentenced Petitioner to the mandatory minimum of 120 months incarceration. (*Id.* at 8.)

Petitioner did not appeal, but instead filed the instant motion on November 26, 2013. (Mot. to Vacate (as paginated by CM/ECF) at 17.) As grounds for relief, Petitioner claims that defense counsel provided ineffective assistance during plea negotiations and at the sentencing phase of his

4

case.  (*Id.* at 4-6, 8-9.)  Petitioner does not specify what relief he is seeking; however, it is apparent from his allegations that he wants the Court to, at the least, discard his guilty plea.

## II. Standard of Review

A motion to vacate under 28 U.S.C. § 2255 allows a prisoner to challenge the legality of his sentence on four grounds: (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "the court was without jurisdiction to impose such sentence"; (3) "the sentence was in excess of the maximum authorized by law"; or (4) the sentence is "otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  The petitioner bears the burden of demonstrating his grounds for relief by a preponderance of the evidence.  *See Hall v. United States,* 30 F. Supp. 2d 883, 889 (E.D. Va. 1998).

A § 2255 motion is, in essence, a statutory federal habeas corpus action that collaterally attacks a sentence or conviction through the filing of a new proceeding, as contrasted with a direct appeal.  *See In re Jones,* 226 F.3d 328, 332–33 (4th Cir. 2000) ("'[Section] 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus[.]'" (quoting *Davis v. United States,* 417 U.S. 333, 343 (1974))).  The existence of the right to pursue a collateral attack, however, does not displace a direct appeal as the "usual

and customary method of correcting trial errors." *United States v. Allgood,* 48 F. Supp. 2d 554, 558 (E.D. Va. 1999). Claims regarding trial or sentencing errors that could have been, but were not, raised on direct appeal are procedurally barred from review under § 2255. *See Bousley v. United States*, 523 U.S. 614, 621-22 (1998).

Nevertheless, an exception applies for claims of ineffective assistance of counsel, such as those asserted here. *See United States v. Martinez,* 136 F.3d 972, 979 (4th Cir. 1998); *United States v. King*, 119 F.3d 290, 295 (4th Cir. 1997) ("[I]t is well settled that a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance." (citation omitted)).

Under the standard promulgated in *Strickland v. Washington,* 466 U.S. 668 (1984), a petitioner is required to demonstrate two elements in order to state a successful claim for ineffective assistance: (1) "counsel's representation fell below an objective standard of reasonableness"; and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694.

To establish constitutionally deficient performance under the first prong, a petitioner must demonstrate that his

6

lawyer "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland,* 466 U.S. at 687.  Such a showing must go beyond establishing that counsel's performance was below average, since "effective representation is not synonymous with errorless representation." *Springer v. Collins,* 586 F.2d 329, 332 (4th Cir. 1978); *see also Strickland,* 466 U.S. at 687.  Given it is all too easy to challenge an act, omission, or strategy once it has proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland,* 466 U.S. at 689.

In assessing performance, a court must apply a "heavy measure of deference to counsel's judgments." *Strickland,* 466 U.S. at 691.  A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690.

The second prong requires a petitioner to "affirmatively prove prejudice," which necessitates a showing that "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Keeping this standard in mind, Petitioner's claims of ineffective assistance are addressed below.

### III. Analysis

A. <u>Petitioner's Claim of Inaccurate Advice Regarding Sentencing Exposure</u>

Petitioner first argues that he received erroneous advice prior to his guilty plea concerning his possible sentencing exposure.  (Mot. to Vacate at 4.)  Specifically, Petitioner contends the following:

> Defense counsel Karen Scarborough provided petitioner with grossly erroneous advise [sic] as to the comparative sentencing exposure which would result from a guilty plea and from a jury conviction, . . . . Counsel advised that if petitioner lost a jury trial he would receive a mandatory minimum of thirty-five years in prison but if he accepted the plea agreement the U.S. would only give him a mandatory minimum of ten years.  Counsel advise [sic] that regardless of whether petitioner went to trial or plead guilty, he would receive a minimum of fifteen years.  A determining factor affecting the petitioner's decision whether to plead guilty or go to trial.

(*Id.*)

First, Petitioner cannot demonstrate the necessary prejudice to prevail on this claim.  The requirements to assert

a claim of ineffective assistance concerning counsel's advice prior to pleading guilty, as alleged here, are slightly different.  As applied to the plea situation, the first prong of *Strickland* remains the same in that the attorney's advice must fall within the range of reasonable conduct.  *See Hill v. Lockhart,* 474 U.S. 52, 58 (1985).  The prejudice prong, however, requires a petitioner to demonstrate that "counsel's constitutionally ineffective performance affected the outcome of the plea process."  *Id.* at 59.  "In other words, in order to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id.*  "In cases where a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial, the defendant will have to show 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"  *Missouri v. Frye*, __ U.S. __, 132 S. Ct. 1399, 1409 (2012) (quoting *Hill*, 474 U.S. at 59).  Prejudice is determined based on an objective evaluation.  *See United States v. Dyess,* 730 F.3d 354, 361-62 (4th Cir. 2013).  A petitioner's "subjective preferences, therefore, are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all the facts."  *Id.*

9

Petitioner's instant claim fails because he has not demonstrated that counsel's alleged deficient performance distorted the outcome of his case.  He provides no objective evidence showing that, absent counsel's misadvisements, there is a reasonably probability that he would have foregone the plea and proceeded to trial.  *See Padilla v. Kentucky,* 559 U.S. 356, 371-72 (2010) (noting that "petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances").  There is nothing in the record to establish that Petitioner may have been able to avoid conviction or that a meritorious defense might have been available to him at trial.  Instead, the evidence of Petitioner's guilt is overwhelming.  As noted above, the Government possessed multiple taped interviews with the victim and extensive documentary evidence corroborating her story of sexual exploitation.  Had Petitioner gone to trial on these facts, he would have faced an increased mandatory minimum of fifteen years and been subject to a higher sentencing range.  It would be objectively unreasonable to proceed to trial under such circumstances.  *See Turner v. United States,* Nos. 1:07CR152, 1:08cv1273, 2009 WL 577592, at *3 (E.D. Va. Mar. 4, 2009) ("Judged objectively, there is simply no reasonable likelihood [petitioner] would have pleaded not guilty and insisted on going to trial absent [counsel's] supposed errors.").

10

Judge Friedman addressed a similar scenario in the case *Weymouth v. United States,* Nos. Civ.A. 204CV603, CRIM.A. 203CR82, 2005 WL 1667754 (E.D. Va. June 15, 2005). There, petitioner claimed that counsel rendered ineffective assistance by providing erroneous information about the minimum sentence associated with his guilty plea. *Id.* at *5. Petitioner asserted that he would have proceeded to trial but for counsel's erroneous advice. *Id.* In rejecting petitioner's claim of prejudice, the court stated:

> [I]t is clear that had he proceeded to trial and been convicted, his sentence would have been longer than the one he actually received. It is therefore impossible for petitioner to demonstrate that, had his counsel not erred in advising him of the potential penalties he faced, the result would have been more favorable for him. Not only would petitioner's sentence be enhanced by the filing of a § 851 notice, but he would not have received the three-point reduction in his offense level for acceptance of responsibility. He therefore would have faced, at a minimum, 140 months imprisonment if convicted. Because he pleaded guilty, however, he received only 124 months imprisonment. It is twisted logic to claim that one is prepared to spend at least 140 months in prison, but not be satisfied with a sentence of 124 months. Yet this is what petitioner would have the court believe.
>
> . . .
>
> In light of his criminal history and the nature of the offenses with which petitioner was charged, the plea agreement was very favorable to him, and it is clear that any

> sentence imposed by this court after a conviction at trial would not have been as lenient. Therefore, it is clear that petitioner's claim does not meet the prejudice prong of the *Strickland* test. Accordingly, petitioner's claim of ineffective assistance of counsel is dismissed.

*Id.* at *6-7. Judge Friedman's rationale is equally applicable here. Petitioner's bare assertion that he would have proceeded to trial is legally insufficient and highly incredible given that any resulting sentence would not have been as lenient. *See Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012) (discrediting petitioner's claim that she would have proceeded to trial where she "faced overwhelming evidence," "had no rationale defense, would have been convicted[,] and would have faced a longer term of incarceration").

In addition to Petitioner's failure to establish prejudice, the record does not support his claim that counsel provided erroneous advice regarding his sentencing exposure and mandatory sentence. For example, during Petitioner's initial appearance, the following exchange occurred regarding the applicable penalties:

> Court: Counsel, what's the possible penalty for this offense?
>
> United States: Your Honor, if he is convicted of violating section 2422(b), he faces a mandatory minimum of ten years in prison and a maximum of life. If he is convicted of violating section 2251(a),

> production of child pornography, he faces a
> mandatory minimum term of 15 years and a
> maximum of 30 years in prison.  If he is
> convicted of violating receipt of child
> pornography under section 2252(a)(2) he
> faces a mandatory minimum of five years in
> prison and a maximum of 20 years in prison.

(Gov't Ex. D, Initial Appearance Tr. at 3.)  Petitioner was

present during this exchange.  Moreover, the Court issued a

memorandum opinion several weeks later that again noted the

mandatory minimum sentence involved was fifteen years should

Petitioner proceed to trial.  (Mem. Op. [Dkt. 23] at 3.)

Finally, during the plea colloquy, Petitioner affirmed that he

understood the sentencing exposure he faced by pleading guilty

and that he was satisfied with counsel's performance.  It is not

credible for Petitioner to now claim that he believed the

mandatory minimum sentence for his crimes could be thirty-five

years.  *See United States v. Foster*, 68 F.3d 86, 88 (4th Cir.

1995) ("[I]f the information given by the court at the Rule 11

hearing corrects or clarifies the earlier erroneous information

given by the defendant's attorney and the defendant admits to

understanding the court's advice, the criminal justice system

must be able to rely on the subsequent dialogue between the

court and defendant." (citation and internal quotation marks

omitted)); *Ecker v. United States,* No. 1:11cv1006 (LMB), 2012 WL

6214356, at *7 (E.D. Va. Dec. 12, 2012) (rejecting petitioner's

ineffective assistance claim on grounds that the record
contradicted his arguments).

Accordingly, Petitioner's aforementioned claims of
ineffective assistance will be dismissed.

B. Petitioner's Remaining Complaints Regarding Counsel's
   Conduct Before the Guilty Plea

Petitioner makes a slew of additional allegations
regarding counsel's performance before his guilty plea.
Scattered within his petition, Petitioner alleges the following:

1.  Counsel "would persist on signing the guilty
    plea";

2.  "Counsel never discussed her strategy for
    defending me at trial (if trial had been my
    option)";

3.  Counsel "never explained any of the law nor
    regulations in regards to the sentencing
    guidelines which I was being sentenced under";

4.  "Counsel never discussed the advantages and
    disadvantages of going to trial versus pleading
    guilty";

5.  Counsel should have "researched cases for a
    lesser guilty plea"; and

6.  "Counsel failed to explain any appeal
    procedures."

(Mot. to Vacate at 4-6, 8-9.)

In addition to being conclusory, these claims are
wholly refuted by Petitioner's statements made under oath during
the plea hearing.  *See United States v. Terry,* 366 F.3d 312, 316
(4th Cir. 2004) ("[C]onclusory allegations are insufficient to

14

establish the requisite prejudice under *Strickland*."); *United States v. Murray,* Nos. 5:08-cv-80028, 5:04-cr-30016, 2008 WL 4179320, at *6 (W.D. Va. Sept. 10, 2008) (noting that "generalized allegations and conclusory statements . . . without specific evidentiary support, are insufficient to establish that counsel . . . provided ineffective assistance in any way"). Petitioner has offered no convincing evidence that would undermine his prior sworn statements that counsel had fully reviewed this case with him, including his right to proceed to trial, and answered all of his questions.  In fact, Petitioner affirmed that he was satisfied with counsel's services. Consequently, Petitioner is bound by these declarations, and his current allegations to the contrary must be rejected.  *See Fields v. Attorney Gen. of Md.,* 956 F.2d 1290, 1299 (4th Cir. 1992) ("Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy."); *see also United States v. Lemaster,* 403 F.3d 216, 221 (4th Cir. 2005) ("[I]n the absence of extraordinary circumstances . . ., allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" (citations omitted)); *Rahman v. United States*, Nos. 7:08-CR-126-D, 7:10-CV-69-D, 2013 WL 3984435, at *3 (E.D.N.C. Aug. 1, 2013)

15

("The court must dismiss claims that rely on allegations that
contradict sworn statements at the Rule 11 hearing." (citation
omitted)).

C. Petitioner's Claim that Counsel was Intoxicated

Next, Petitioner alleges that counsel provided
ineffective assistance because she smelled of alcohol during one
of their meetings.  (Mot. to Vacate at 5.)  It is unclear from
the petition whether this alleged incident occurred before
Petitioner's guilty plea or during the sentencing phase.
Regardless of the timing, Petitioner's claim is meritless.

First, Petitioner does not state that counsel was
intoxicated.  Rather, he merely claims that she carried an odor.
(Mot. to Vacate at 5 ("[S]he visited me with a strong smell of
ETOH on her breath.").)  In any event, Petitioner fails to
explain how this rendered her performance objectively
unreasonable.  Absent such allegations, this claim fails.  *See*
*Frye v. Lee,* 235 F.3d 897, 907 (4th Cir. 2000) ("[I]n order for
an attorney's alcohol addiction to make his assistance
constitutionally ineffective, there must be specific instances
of deficient performance attributable to alcohol." (citation
omitted)); *United States v. Savala Ramirez,* 127 F. App'x 414,
417 (10th Cir. 2005) (rejecting petitioner's claim that his
attorney was intoxicated at sentencing where petitioner failed
to identify anything on the record to support the truthfulness

16

of his allegations); *Campbell v. United States*, Nos. 2:04-cr-01046-DCN-2, 2:09-cv-70048-DCN, 2013 WL 1302472, at *3 (D.S.C. Mar. 28, 2013) ("[G]eneralized assertions [of substance abuse] . . . do not automatically result in a successful ineffective assistance claim.  The Fourth Circuit has explained that an attorney's pattern of substance abuse does not amount to ineffective assistance unless the petitioner provides specific instances where his attorney's deficient performance was caused by substance abuse.").  Finally, even assuming counsel was impaired at some point, Petitioner has failed to establish any resulting prejudice.  As noted above, Petitioner cannot show that it would have been objectively reasonable to reject the plea deal and proceed to trial.  And, counsel's sentencing brief resulted in a downward variance to the mandatory minimum.  By all accounts, counsel competently represented Petitioner through each stage of these criminal proceedings.

D. Petitioner's Claims of Ineffective Assistance During Sentencing

Lastly, Petitioner appears to attack counsel's conduct during the sentencing phase.  (Mot. to Vacate at 4-6, 8-9.) Specifically, Petitioner alleges:

1.   Counsel never reviewed the presentence report;

2.   Counsel failed to present Petitioner's criminal record to the Court at sentencing;

17

3.   "[A]t sentencing [counsel] failed to say a word on my defense";

4.   Counsel "failed to be present when I was visited by parole officer [sic] in regards to my case";

5.   "Once [counsel] had received all of the payment [she] wanted me to dismiss her of her duties. She would constantly call and harass me to fire her"; and

6.   Counsel "never informed me I would be enhanced as a career criminal."

(*Id.*)

The majority of these claims are refuted by the record. (*See* Gov't Resp. at 22-24.)   For instance, Petitioner's first three allegations are flatly contradicted by his sworn statements to the Court and counsel's sentencing memorandum. During the sentencing hearing, Petitioner affirmed that he had a chance to read the presentence report and review it with counsel. (Gov't Ex. C, Sentencing Tr. at 3.)   When asked if the presentence report was accurate, Petitioner replied "Yes." (*Id.*)   The record also illustrates that counsel submitted an extensive sentencing memorandum and briefly summarized her position at argument. (*Id.* at 4.)   As discussed above, such claims are insufficient. *See Rahman*, 2013 WL 3984435, at *3 ("The court must dismiss claims that rely on allegations that contradict sworn statements at the Rule 11 hearing." (citation omitted)); *Jackson v. United States,* 638 F. Supp. 2d 514, 530

(W.D.N.C. 2009) ("[A]llegations which are contradicted by the record do not warrant relief[.]" (citation omitted)).

In any event, there is no prejudice that could have resulted from these alleged errors during sentencing. Petitioner received the mandatory minimum sentence; therefore, it is simply impossible for Petitioner to have received a better result but for the alleged errors. *See Parris v. United States*, No. 7:06CV00607, 2007 WL 2254582, at *3 (W.D. Va. Aug. 5, 2007) ("Where the statute of conviction calls for a mandatory minimum sentence . . . the district court must apply the mandatory statutory sentence except in limited circumstances not present in [this] case."); *see also United States v. Johnson,* No. 3:09-501-JFA, 2011 WL 6182022, at *3 (D.S.C. Dec. 13, 2011). Accordingly, these claims fail.

## IV. Conclusion

In sum, the record does not support Petitioner's claims.  There is nothing to indicate that counsel failed to adequately represent Petitioner's interests at any point during the underlying proceedings, and even if she did, there was no resulting prejudice.  Therefore, the Court will deny Petitioner's motion and dismiss this action.  An appropriate Order will issue.

/s/
_____

April 3, 2014                James C. Cacheris
Alexandria, Virginia    UNITED STATES DISTRICT COURT JUDGE